The opinion of the Court was delivered by
Gibson J.
In no country, where the blessings of the common law are felt and acknowledged, are the interests and estates of married women so entirely at the mercy of their husbands as in Pennsylvania. This exposure of those, who, from the defenceless state in which even the common law has placed them, are least able to protect themselves, is extenuated by no motive of policy, and is by no means creditable to our jurisprudence. The subordinate and dependent condition of the wife, opens to the husband such an unbounded field to practise on her natural timidity, or to abuse a confidence, never sparingly reposed in return for even occasional and insidious kindness, that there is nothing, however unreasonable or unjust, to which he cannot procure her consent. The policy of the law should be, as far as possible, to narrow, rather than to widen, the field of this controlling influence. In England, the courts of equity will not assist the husband to obtain possession of his wife’s personal property, although it becomes his absolutely on the marriage, before he makes an adequate settlement on her: here, he has power to obtain her personal estate, not only without .condition, but in some instances, by means of the intestate acts, even to turn her real into personal estate, against her consent. In other countries, the wife’s dower, that sacred provision which the law makes for her, in return for the personal property she brought her husband, and in recompense of a lifetime devoted to him and his children, is put beyond the reach of every effort which selfishness or *51 profligacy can make, to deprive her of it: in this, it may be swept away by his debts, contracted in the gratification of his vices. In the country whence we derive our laws, the wife’s land can be aliened only with her assent, deliberately expressed on a fair, full, and careful, separate examination, in a court of record : in this, the examination is considered a matter of such little importance, that it is entrusted to a justice of the peace, by whom it is sometimes entirely dispensed with in fact, but often slubbered over, even in presence of the husband himself. These are considerations which induce the mind to pause, before it, consents to adopt the rule, that the act of the magistrate is to be considered as having been rightly done till the contrary appear ; and thereby to. withdraw the only protection, inefficient as it is, which the law interposes in behalf of married women. Alienation of the wife’s land, should not be of too easy access ; but when a case occurs, as it undoubtedly sometimes does, where a sale is the best thing that can be done for the interests of all concerned, a strict adherence to the necessary forms requires but a moderate share of attention, and the exaction of it should, therefore, not be considered a hard.ship. Even in a fair transaction, if the purchaser will not look to the title, he rfnist suffer. On the other hand, how often do we see the conveyances of the wife made the instrument of the open and unblushing selfishness of the husband. Where the conveyance is to a trustee, for the purpose of an immediate reconveyance to the husband, what honest mind would feel regret, that in the hurry of accomplishment, some circumstance, merely formal, was omitted, by which the wife and her family, were rescued from his rapacity. The very circumstance of a reconveyance ought to be satisfactory evidence of fraud, by undue influence; and although I do not know, that a Chancellor would set aside the wife’s deed on the same ground on which he interferes to defeat an advantage gained by a parent or guardian, while their influence over the child or ward is supposed to continue, still it ought to induce a Court to lay hold of the slightest extrinsic circumstance to effect the same purpose. Entertaining these views, we are called onto overrule the case of Watson v. Bailey, on the ground that subsequent decisions have essentially impaired its authority. The principle established in that case was, that the requisites of the acknowledgment contemplated *52 by the act of assembly should appear, on the face of theticertificate, to have been substantially complied with. The next in order, was the case of M'Intire v. Ward, and it is the only die, that bears the semblance of departure from the principle before decided; yet even there, we find the judges reasserting it, and endeavouring (but I confess, in my judgment, without success,) to bring the decision within it. Then, in succession, came Shaller v. Brand, and Evans v. The Commonwealth, in each of which the principle of Watson v. Bailey, was rigidly inforced: and at March Term, 1819, Hopkins v. Burchell, was decided on the same ground. There has, therefore, been no decision, directly infringing on Watson v. Bailey, although M'Intire v. Ward, may be thought to have affected it indirectly; for it is hard to discover, how the Court could sustain the acknowledgment, on the principle assumed. On the ground of precedent, then, I consider Watson v. Bailey, as fully established ; but if it were not, so little am I disposed to relax, that I would rather exact an adherence to the letter, from which any departure can be justified, only from a consideration of the practice that has prevailed, and the insecurity of titles and confusion that would ensue from the adoption of a new course. The question, therefore, is hereafter to be considered at rest, and the appearance of at least a substantial compliance with the provisions of the act is, in all cases, to be exacted, without which the interest of a feme covert cannot be divested.
Judgmeht reversed.