Johnson, J.
1. As to the judicial proceedings: Mrs. Dudley was under eighteen years of age when these proceedings were had, and when the sale was made, but over eiglitee7i when the deed was executed. By the statute then in force, she would reach her majority at twenty-one, or October 9,1820. By the statute under which this deed was executed (1 Chase, 484), she, being a married woman, and, at the date of said deed, March, 1818, “not less than eighteen years of age,” had capacity, her husband joining, to make a valid conveyance, notwithstanding her minoritju
Mrs. Dudley was an infant feme covert at. the time these judicial proceedings, sale and conveyance were had.
For the purposes of this case we may assume that the court of common pleas, sitting as a court of chancery, had the power in a proper case, to convert the wife’s lands into money for her support. Under what circumstances this would be done, or what would constitute a proper case, we need not here determine, as it is manifest from the petition and the fragmentary proceedings disclosed, that this was a proceeding under the statute, and not an appeal to the chancery powers of the court, and was so treated by the court.
It cannot be claimed that any attempt was made to invoke the chancery powers of the court. The application for an order of sale was based uj>on the statute (2 Chase, 928).
The 36th section (2 Chase, 935), conferred upon the court *570 the power to appoint guardians, whenever it conceived it to be necessary, to all minors within the county, and on good cause shown to authorize guardians to sell all or part of the real estate of their wards, and also to authorize guardians heretofore chosen, or appointed to do the same. It was provided that minors living out of the State, should have the benefits of this provision if their guardians should give security approved by the court. It was further provided that in the sale of real property by guardians they should be governed by the same regulations 'as are required of administrators in such sales, under the same act, but no sale could be made unless the court was satisfied “ that such sale is necessary for the support or education, of such ward or wards, nor shall any sale in such case extend further than may be required for the purpose aforesaid.”
Sections 33, 3é and 35 regulated the sales by executors and administrators, and provided for conveyances. Section 35 provides that they “ shall by deed duly executed, convey to the person purchasing the property so sold, which deed shall vest the title in the purchaser as completely as though it had been conveyed by the deceased in his life time.” To apjfiy this provision to sales by guardians, mutatis muta/ndus, would render it essential to a transfer of title of the infant feme covert, that her guardiam, should convey to the purchaser. If, however, the order to sell was valid, the husband and wife, she being of lawful age, might execute the conveyance, as provided by the statute for the conveyance of a wife’s estate, thus ratifying the act of her guardian, her husband, or of the court.
If it be conceded that a court of chancery might, in a proper case, convert the wife’s land into money for her support, notwithstanding her husband’s liability to support her out of his own estate, and the rents and profits accruing to him in virtue of his marital right from her land, yet it seems clear, that in order to authorize such power, it should appear that these resources of the husband were inadequate, and that such conversion was a necessity. Where such a case is made, equity would in all essential matters follow the statute for the projection of minors.
Neither the statute, nor any principle of equity, of which we *571 are acquainted, would allow a liusband -to constitute himself a guardian of his infant wife’s lands, anj without security, and upon ex parte hearing permit him to convert them to his own use. The petition to sell this land was beyond controversy an appeal to the probate, not to the chancery powers of the court. It is filed by the guardians of the other three children, and by “ Ambrose Dudley, husband of Martha Catharine Dudley.”
It represents that some of the petitioners are already in advance for the support of'their wards, and to meet such advances, and for the future support of the heirs, an order tt> sell the lands is prayed for. The reasons given for a sale and the relief sought, could not apply to Ambrose Dudley, for, being husband, and bound to support his wife, the money expended by him for that purpose could not be regarded as advances. His marital rights gave him all her personalty, choses in action reduced to possession, and the rents and profits of her real estate, coupled with the legal obligation to maintain and support her at his own expense.
Neither a court of equity nor this statute conferred upon a court the power to absolve him from this obligation.
After a careful consideration of the terms of the statute, and the authorities and arguments, we have reached the conclusion that it did not confer upon the husband the right to constitute himself guardian for his wife for the purpose of selling her land, nor upon the court the power to grant an order of sale on his application as her husband.
It seems to be conceded that by the marriage the guardianship of William Irwin terminated in fact, if not in law. The exercise of any duties as guardian over either the person or property of his ward would after marriage be incompatible with the marital rights and obligations of the husband as the law then stood. '
William Irwin was appointed guardian August 3,1814. The act of 1816 took effect May 1, 1816. Mrs. Dudley was married November 13, 1816. This statute provided: 1st, for the appointment of guardians of minors; 2d, to authorize them to soil lands of their wards; and 3d, to authorize “ any guardian heretofore chosen or appointed ” to sell the land of his *572 ward. The guardian heretofore chosen or appointed was William Irwin. If we concede that his office had terminated by the marriage, except for purposes of settling his trust, the husband by virtue . of his marital rights was not such a guardian as the law contemplated, and was not authorized to sell his wife’s land. Whiteacre’s case, 4 Johns. Ch. 378; Bishop on Married Women, § 585 ; Ludlow’s Heirs v. Johnson, 3 Ohio, 561; Adams v. Jeffries, 12 Ohio, 253; Sheldon v. Newton, 3 Ohio St. 494; Perry's Lessee v. Brainard, 11 Ohio, 442; Lessee of Goforth v. Longworth, 4 Ohio, 130; Newcomb’s Lessee v. Smith, 5 Ohio, 447; Miami Exp. Co. v. Halley, 7 Ohio, pt. 1, 11.
The petition for the sale of the land being presented by one not authorized to present it, without any showing that would authorize a court of chancery to intervene, invested the court with no power or jurisdiction to grant the order. Freeman on Yoid Judicial Sales, §§10,11, and cases cited.
II. As to the validity of the deed, and its effect as a conveyance of the wife’s estate.
With its effect, as a conveyance, or contract to convey, the Tmsbcmd’s interest, in these lands, we are at present not concerned.
Whether this deed be regarded as based upon the order of sale, and in execution of it, or as the independent act of husband and wife, under the act of 1805, is not important, as in either case the deed must be duly executed, and this depends upon the second section of the act of 1805. 2 Chase, 935, § 35; Miami Exp. Co. v. Halley, 7 Ohio, pt. 1, 11.
If under this section an acknowledgment by the wife, and a certificate thereof in due form, is essential to a valid conveyance, then this deed is fatally defective.
Upon this point we adopt the language of the learned judge in Ward v. McIntosh, 12 Ohio St. 231, 241, as equally applicable to section 2 of the act of 1805 :
“ In Silliman v. Cummins, 13 Ohio, 118, it was held to be the settled law of this state, that the interest of a married woman in real estate could only be transferred by a full compliance with the statute authorizing such transfer, and that *573 unless the statutory provisions, from which alone her power to act is derived, are complied with, a deed executed by her will be inoperative and void. And although some of the points adjudged in that case, in regard to the legal effect of curative statutes, and the great strictness in reference to the certificate which it seems to enjoin, have been shaken in the subsequent case of Chestnut v. Shane’s Lessee, and four other cases, reported with it in 16 Ohio, 599, et seq., it is still undoubtedly true, that in order to make the deed of a married woman effective to transfer her estate or to bar her dower, there must have been a substantial compliance with all the requirements of the statute.” .
In the prolonged controversy referred to by Judge Peck, and in the masterly review of this subject by Judge Hitchcock in Ruffner v. McLennan, 16 Ohio, 639, wherein all previous legislation was noticed and construed, the point was not, whether an acknowledgment was necessary, for that was, as is claimed, taken for granted, but what was a proper certificate thereof. Some of the decisions prior to that date were to the effect, that if the certificate did not specifically state the facts constituting such an acknowledgment, it was void; while others held, that if the certificate of the officer, in general terms-, showed that he had performed his duty, it was sufficient, as in such case, the court woiild presume all the steps had been taken. Brown v. Farran, 3 Ohio, 140; Ruffner v. McLennan, 16 Ohio, 650.
Since the case of Ward v. McIntosh, the rule has been adhered to, which is there stated, that to make the deed of a married woman effective to transfer her estate, or to bar her dower, there must have been a substantial compliance with all the requirements of the statute.
Aside from the fact, that the husband did not acknowledge this deed, the certificate fails to show, that the deed was read or otherwise made known to the wife by the justice, on a separate examination, or that she did voluntarily, and of her own free will and accord, malee, seal, and as her act and deed deliver the same, &c.
Whether we test this acknowledgment by the act of 1805, *574 or by tbo law of Kentucky, as shown in the agreed statement of facts, the result is the same, so we are remitted to the principal question mooted in the argument, namely: was an acknowledgment, essential to transfer the wife’s estate ?
Section 2 of the act of 1805 relates to conveyances by husband and wife, as follows:
“ That where any husband and wife shall incline to dispose of and convey the estate of the wife, or her right in or to any lands, tenements, or hereditaments, whatsoever, it shall' and may be lawful for the said husband and wife — she being not less than eighteen years of age — to malee, seal, deliver and execute any grant, bargain and sale, lease, release, feoffment, deed, conveyance or assurance in the law, whatsoever, for the lands, tenements and hereditaments intended to be by them passed and conveyed, and after such execution, to appear'before a judge of the supreme court, or court of common pleas, or a justice of the peace, and acknowledge the same, which judge or justice of the peace is hereby authorized and required to take such aclmowledgment, in doing whereof, he shall examine the wife separate and apart from her husband, and shall read or otherwise make known the full contents of such deed or conveyance to the said wife, and if, upon such separate examination, she shall declare that she did voluntarily, and of her, own free will and accord, seal, and as her act and deed, deliver the said deed or conveyance without any coercion or compulsion of her husband, every such deed or conveyance shall be and the same is hereby declared to be good and valid in lem, to all i/n-tents and purposes, as if the said wife had been a sole and not a covert at the time of such sealing and delivery, and the judge or justice taking such acknowledgment shall, under his hand and seal, certify the same upon the back of the deed or conveyanceP
This section took the place of the territorial law of June 26, 1795 (1 Chase, 186) which it repealed (1 Chase, 486). As the act of June 18, 1795 (1 Chase, 167), made no provision for deeds by married women, the act of June 26 was adopted almost literally from the laws of Pennsylvania of 1770. 1 Dunlop’s Laws, 50.
*575 Counsel for defendants below concede that there are many Mota, as they term them, to be found in the decisions of this court, to the effect that a deed under this section should be acknowledged, but they claim that this point has never been directly before the court, and that it has been “taken for granted ” that such is the law, and for this reason they ask a reconsideration of the question.
It is true, as is said, that it sometimes happens, that principles the most firmly established entirely elude observation until some controversy arises, which directs the mind to the precise point, and hence that is often taken for granted which proves to be unsound.
With this fact in mind we have carefully examined the learned and acute arguments adduced to show that the construction that this statute has uniformly received for seventy-five years is erroneous. We cannot adopt this conclusion. It is unsupported by .the terms of the act, which declares that such an acknowledgment is essential to a valid conveyance by a married woman. This section requires a joint acknowledgment before the officer, and that he shall make known to her upon a separate examination, the contents of the deed, and that she shall then declare that she did voluntarily seal and as her act and deed deliver the same without any compulsion of her husband. When all this is done, “ every such deed or conveyance shall be and the same is here by declared to be good and valid in law.”
When not so executed, the inevitable conclusion is, it is not as to her good and valid in law. This point as to a separate examination was before the court in Carney v. Hopper, 17 Ohio St. 39, where it was held :
“ 1. A conveyance, by a husband and wife, of lands of the husband in this state, executed in another State, but not in conformity to the laws of such State, or the statute of this state, will not bar the right of the wife to dower in such lands after the decease of the husband.
“ 2. Where a husband and wife joined in.the conveyance of the lands of the husband under the act of 1805, and the acknowledgment of the deed does not show that the wife was *576 examined ‘ sepai'ate and apart from lier husband,’ &c., as required hy the second section of the act, the deed is insufficient to bar the widow’s right of dower in the lands so conveyed.”
In that case the deed was held void, because not executed according to the second section, of the act of 1805, for want of separate examination and acknowledgment of the wife, and a proper certificate by the justice, nor was it according to the law of the state where executed, that law requiring that such acknowledgment shall be taken by two justices.
The key-note of that case is, that “ without a compliance with the second section of the act of 1805, the ackowledgment was void, even though made before an officer authorized to make it, “for it is only under the protecting provisions of the statute that the conveyances of married women are {declared to be good and valid in law.’ ’ ’ 17 Ohio St. 47.
The point was also made that the deed was defective, because there was but one witness, but that defect was not alluded to by the court; hence we are warranted in saying, that the question now before us was directly decided in that case. This decision ought to be conclusive. It is the manifest meaning of the words of the statute as understood and accepted in many decided cases prior to that case, and accords with the construction given by the courts of Pennsylvania to the act of 1770 (1 Dunlop’s Laws, 50), from which this section was borrowed. Ruffner v. McLennan, 16 Ohio, 639 ; Worthington v. Young, 6 Ohio, 313 ; Foster v. Dennison, 9 Ohio, 125; Watson v. Bailey, 1 Binney, 470; McIntire v. Ward, 5 Binney. 296; Evans v. Commonwealth, 4 Serg. & Rawle, 272 ; Watson v. Mercer, 6 Serg. & Rawle, 49; Fowler v. McClurg, 6 Serg. & Rawle, 143.
Our conclusion, therefore, is, that the deed in the case at bar does not upon its face divest the heirs of Catherine Dudley of the legal title to this land.
III. This brings us to the last question in the case. Is this defectively executed deed curable under the provisions of the act of 1857 or of 1859 ?
Prior to the act of 1857 it was the settled law of this state that chancery would not compel a married woman to execute a *577 perfect deed, though by mistake it failed to conform to her intention when executed. Purcell v. Goshorn and wife, 17 Ohio, 105.
By that act the courts are “ authorized and empowered to correct, amend and relieve against any errors, defects or mistakes occurring in the deed or other cowveyance of any husband and wife heretofore or hereafter to be executed and intended to convey or incumber the lands or estate of the wife or her right of dower in the lands of her husband in the same manner and the same extent as said courts are or shall be authorized or empowered to correct errors, mistakes or defects in the deeds or conveyances of any other persons”
By this statute courts were authorized to correct errors, defects or mistakes of a married woman in a deed or conveyance of any Imsband and wife to the same extent as if she were a femme sole, and to make this new power more effective it was extended to conveyances heretofore as well as hereafter to be executed.
In terms this statute clothed the court with the same power to correct,- amend and relieve against any, errors, defects and mistakes in deeds or other conveyances of husband and wife, as against the wife, as it possessed against other persons, and expressly made this power retroactive.
This power over a married woman was expressly limited to “ deeds or other conveyances of husband and wife.”
■ Hence it was held, that a deed by a married woman, in which her husband did not join, was a nullity, and as a contract for a conveyance was alike void, and that such a deed could not be cured under this statute. Miller v. Hine, 13 Ohio St. 565.
This is manifestly so, for the obvious reason, that it was not a deed of “ husband and wife ” but of the wife alone, hence not within the terms of the power given.
In that case, as well as in the case of Goshorn v. Purcell, It Ohio St. 646, it was further held that acticle 2 of section 28 of the constitution did not authorize the legislature to give power or capacity to a married woman, which she did.not possess,when the error, omission or mistake occurred, but only to authorize *578 courts to cure such defects as occurred in doing an act which she was by law authorized to do.
Thus, in Goshorn v. Purcell the failure to insert the wife’s name, as a grantor of her land, was cured. To the same effect is Smith v. Turpin, 20 Ohio St. 478.
So, the omission of the officer to certify the separate examination of the wife, in a deed in which her husband joins, may'be cured. Kilbourne v. Fury, 26 Ohio St. 153.
Carney v. Hopple, supra, was the case of a deed defectively executed before a single justice of the peace in Kentucky, where the certificate did not show the separate examination, and acknowledgment by the wife. The defect was treated as curable, but was not cured for want of proof showing that the. provisions of the statute had actually been complied with. There was no proof that the officer did omit anything that was in fact done.
Where there is nothing in the deed tending to show that anything was omitted by mistake, the court will not, in the absence of proof, presume such omission. Henry v. Henry, 27 Ohio St. 121; Ludlow v. O’Neil, 29 Ohio St. 181; Warner v. Callender, 20 Ohio St. 190.
The act of 1859 (2 S. & C. 1172) was somewhat broader in its objects and terms than the act of 1857. It extended the power of the court in this respect, “ to any instrument in writing,” or to “ any proceeding not in strict conformity to law,” where, by reason of inadvertence or otherwise, of any officer, party or corporation there is an omission, defect or error. In such cases the courts are authorized to give full effect to all such instruments and proceedings.
The revision of these curative statutes took effect September 1, 1878 (75 O. L. 782), and was in force when this action was commenced and decided. This revision was adopted as part of the revised statutes, sections 5867 to 5872.
It will appear by a careful comparison of these several enactments, that several changes have been made in punctuation and in the words employed, but as the act of 1857 is substantially the same as section 5872, as it stood in the act of *579 1878 (div. 7, ch. 16, § 6), these changes do not affect this case, and need not now be noticed.
The constitution (art. 2, § 28,) while prohibiting retroactive legislation, does not prohibit the passage of laws of purely a remedial character, although they relate to past transactions, nor does it prohibit any retroactive general law, authorizing courts to carry intb effect- the manifest intention of parties and 'officers, by curing omissions, defects and errors in instruments and proceedings.
It expressly empowers the legislature by general laws to authorize courts “ to carry into effect, upon such terms as may be just and equitable, the manifest intention of parties and officers, by curing omissions, defects and errors in instruments and proceedings, arising out of their want of conformity with the laws of this state.”
Under this constitutional provision, the act of 1857 was passed, authorizing the correction of deeds or other conveyances of husband and wife, heretofore as well as hereafter made as against the wife to the same extent as against any other person.
In terms, therefore, its retroactive provision embraces the deed before us, so that, if it is the deed of “husband and wife,” within the terms of the statute, and if its defect arises out of the omission, error or mistake in its execution, the court has power to carry out the manifest intention of the parties upon just and equitable terms.
The defect in this deed is found in the acknowledgment alone.
It was jointly signed, sealed and delivered by husband and wife, in the presence of attesting witnesses. As against the husband it was a valid transfer of his title in his wife’s land. It was defectively executed, as a conveyance of the-wife’s estate, not being acknowledged as required by the second section of the act of 1805, or as provided by the law of Kentucky.
If, however, it was the deed of “ husband and wife ” within the meaning of the curative act, that is, her deed, as well as her husband’s, then the court has power to correct it, if a caso is made entitling the grantee or those in privity with him to that relief.
*580 The object of the statute, as well as the constitutional provision, is to enable the courts to cure defective, not perfect,instruments.
The power to correct and cure a “deed or other conveyance of husband and wife,” on account of any error, defect or mis-' take therein, is co-extensive with the defect, and with the powers the parties themselves possessed. Whatever they could have done, and intended to do, the court can do, and whatever mistakes they or the officer have made, whereby the intention of the contracting parties has been defeated, may be cured. It is the power to cure and not a power to make deeds.
This curative act did not, however, give capacity to a married woman to execute a deed, in any other mode than that prescribed by the deeds act. Goshorn v. Purcell, 11 Ohio St. 646; Miller v. Hine, 13 Ohio St. 565.
Under the act of 1831, it was essential to the validity of a deed of a married woman, that her husband should join in the execution u/nd acknowledgment, before an officer, though it is not important that they should do so simultaneously, nor before the same officer, nor that the acknowledgment of each should appear by a single certificate. Ludlow v. O'Neil, 29 Ohio St. 181; Williams v. Robins, 6 Ohio St. 510 ; Newell v. Anderson, 7 Ohio St. 12.
The act of 1831 (§ 1), which governs as to men and unmarried women, requires signing, sealing and acknowledging in presence of two witnesses, and that the signing and sealing shall also be acknowledged before an officer. Section 2 relates to deeds of husband and wife, and in adcliUon to such signing, sealing and acknowledgment by husband and wife, requires the separate examination and acknowledgment of the wife.
By section-1 of the act of 1805, a deed by a person, other than a married woman, may be acknowledged before an officer, or proven by the subscribing witnesses, before such officer. The acknowledgment before an officer being essential under the act of 1831, but not so under the act of 1805, if the deed was duly proved by the subscribing witnesses before such officer.
Chestnut v. Shane, 16 Ohio, 602, arose under the act of 1818. *581 In that case there was a joint acknowledgment, of husband and wife, and the act of 1818, like the act of 1831, made such acknowledgment an absolute, requirement in a deed by a man, or unmarried woman. 2 Chase, 1041.
In Ludlow v. O’Neil, the acknowledgment of the wife was taken and certified in Ohio, and that of the husband afterwards before another officer in California, and it was held, that although the wife’s separate execution standing alone was void, yet it was cured by the subsequent execution by the husband.
The reason for holding the joint execution by the husband and wife necessary, is that the wife may have that protection which would be afforded her by the care and solicitude of the husband for her welfare, and if, as in Miller v. Hine, he has done no act showing his assent to the conveyance, the deed will not be reformed as against her, as it is not his deed, though as to her the certificate is in due form, except as to a joint acknowledgment. Chestnut v. Shane, 16 Ohio, 602, 603.
At common law this was a good deed, as against Dudley, by a mere sealing and deliveiy. By section 1 of the act of 1805, it was valid as to him, if signed, sealed and acknowledged in' presence of two subscribing witnesses, and by acknowledgment or by proof before any of the officers named.
For the wife’s protection section 2 of the act made it lawful, if they inclined to dispose of her estate, or her interest in her husband’s, to make, seal and execute the conveyance, and afterwards to appear before the officer and acknowledge 'the same, in doing whereof he shall examine the wife separate and apart from her husband.
By making, sealing and delivering, jointly with the wife, he afforded her ah the protection contemplated by the act. By her separate examination she was shielded from his undue influence.
This acknowledgment, before the officer after executing and delivering the deed, could afford her no additional protection. Her power or capacity under the statute to convey,Avas complete when he joined with her in making, sealing and delivering the instrument, which as to him operated as a conveyance, and, *582 had no mistake occurred, her conveyance would have divested her title. Ford v. Gregory, 10 Benn. Mon. 175 ; Montgomery v. Hobson, Meigs, 437; Mount v. Kesterson, 6 Coldw. 452.
From this, we conclude, that under the act of 1805, if the deed upon its face shows that it has been jointly signed, scaled and delivered by husband and wife, so as to convey his interest, and acknowledged by the wife, though the certificate thereof is defective, it is the deed of husband and wife, within the meaning of the act of 1857, and if there is an error, mistake or omission whereby it did not carry out the intention of the grantors, it is within the power of the court to correct it.
The object of the statute is to enable courts to carry out the intention of the parties, both husband and wife, by curing errors, defects and mistakes in their deeds or other conveyances made> by themselves or the officer taking the acknowledgment, by which this intention was defeated.
Obviously, therefore, the words “ deed or other conveyance,” in the statute, does not mean a valid instrument, but one infected with some infirmity, arising out of an omission or mistake, which defeats the intention of the parties. The remedy is adequate to relieve the defect. "Whatever the parties had power to do, and intended to do, the court can require to be done, in order to effectuate the intention and in furtherance of justice.
In the exercise of this power the court is clothed with the same authority over the deeds or other conveyances of a married woman, as if she were single.
If, therefore, Mrs. Dudley intended to part with the fee, and had all the protection her husband’s presence, counsel and judgment could afford her against those with whom she was dealing, and all the benefits of a separate examination, so as to guard against undue influence by him, she was in a condition competent to convey, and any omission or inadvertence of herself or the officer which made her. act ineffectual may bo cured.
The only remaining questions are, did she intend to convey the fee, and if so, can the errors of the Kentucky justice, who was not authorized to act alone, be cured %
*583 The agreed statement of facts are ample to convince the court that both Mr. and Mrs. Dudley intended to convey the land in fee, and that this intention was defeated by the defective acknowledgment alone.
The judicial proceedings, the appraisement and sale at the full, value, the receipt of the purchase-money, the recitals and covenants of warranty in the deeds, the delivery of possession, and the attempt to acknowledge by her, in which she relinquishes all her title, are cogent facts in support of this conclusion.
These facts also show that, in behalf of the purchaser and those claiming under him, it is just and equitable that the relief should be granted. But it is said the defective acknowledgment before a single justice in Kentucky cannot be cured.
It is said, as was suggested in Carney v. Hopple, that as he was not authorized by law to make a certificate, it is not admissible io prove any fact it contains, but the agreed statement supplies the proof that Mrs. Dudley did sign, seal and acknowledge, as shown by the deed. This proof appears in the 4th clause of the agreed statement of facts, wdiich applies to all the deeds, and is as follows:
“VI. The following deeds which wore respectively executed and acleno-wledged at the times and places and in the manner and form and by the several persons, just as appears from the deeds themselves and were respectively delivered to the persons named as grantees therein, and who took possession thereunder of the lots of land described in said deeds; which deeds were recorded in the records of Hamilton county at the time and in the place stated with each deed, to wit.”
That case, like this, was an acknowledgment before a single justice in Kentucky, where the certificate omitted the separate examination of the wife, and relief was denied on the ground that there was noywo/that there was such separate examination. It is, in that case, impliedly conceded, that if there was competent proof of such separate examination, as there is in this case,the deed would have been cured.
If, by mistake, the acknowledgment was taken before an officer not authorized to act, and, by reason thereof, the con *584 veyance fails of its intended effect, we see no reason why it may not be cured.
Thus, in Spinning v. Home Build. Association, 26 Ohio St. 483, the acknowledgment of an act of incorporation, made before a notary public, who was not authorized to take it, was held curable under the act of 1859.
The real question is, did the party intend to convey? If he did, and made á mistake, which defeated that intention, it may be cured, whatever its form or character, if justice and equity demands it. This is the rule as to all persons sui juris, independent of the statute, and the object of the statute was to make this power retroactive, and to extend it to deeds or other conveyances of married women.
This deed upon its face shows that the parties undertook jointly to convey, and that the wife separately acknowledged and relinquished all her right in the land, but by her mistake, as we may presume from her manifest intention to part with her title, she did so before an officer not authorized to act, and by his mistake or omission the certificate failed to embody a substantial statement of all the material matters required.
~We think the plaintiff in error is entitled to have relief as prayed for.

Judgment reversed and judgment for plaintiffs in error on crosspetition.